JUDGE KOELTL



Donald J. Kennedy
Laura Anne Reeds
Carter Ledyard & Milburn LLP
Two Wall Street
New York, New York 10005-2072
Tel. No. 212-238-8707
Attorneys for Plaintiff
Star Tankers Ltd.

RECEIVED
JUN 2 5 2008
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

Star Tankers Ltd.,

                              Plaintiff,

          - against -

Strachem Pte Ltd. and Traxpo Enterprises Private
Ltd.,

                              Defendants.

-------------------------------------------------------------- X

08 Civ. 5714 (JGK)

ECF CASE

VERIFIED COMPLAINT

Plaintiff Star Tankers Ltd. ("Owners" or "Plaintiff"), by and through its attorneys,

Carter Ledyard & Milburn LLP, as and for its Verified Complaint against the Defendants,

Strachem Pte Ltd. ("Strachem") and Traxpo Enterprises Private Ltd. ("Traxpo")

(collectively "Charterers" or "Defendants") alleges:

     1.     This is an admiralty and maritime claim within the meaning of Rule 9(h)

of the Federal Rules of Civil Procedure and 28 United States Code § 1333.

2.      At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and operating under the laws of the Isle of Man U.K. and owners of the M/V Lance ("Vessel").

3.      Upon information and belief, defendant Strachem was and still is a foreign corporation or other business entity organized under or existing by virtue of foreign law with a place of business in Singapore.

4.      Upon information and belief, defendant Traxpo was and still is a foreign corporation or other business entity organized under or existing by virtue of foreign law with a place of business in Mumbai and Kolkata, India.

5.      Owners and Charterers agreed to the terms of an Asbatankvoy charter party dated 28 April 2008, for the voyage of the M/V Lance between two safe ports/berths Santos or Paranagua to two safe ports Bombay-Kandla range with laydays of 25th May - 10th June 2008, for a cargo of 32,000 M.T. of crude industrial ethanol at a freight rate of $51 per metric ton basis one loading and two discharging ports and a demurrage rate of $23,000 per day ("Fixture Recap" dated 28 April 2008 or "Charter", Ex. 1). The arbitration clause, Clause 24, of Asbatankvoy C/P form was amended by Clause 11 of the Fixture Recap to provide for disputes to be settled in London with English law to apply (Ex. 1, ¶11).

6.      Charterers directed the Vessel to proceed to loading port of Santos, Brazil to load a cargo of crude industrial ethanol. The vessel arrived at Santos on or about May 25, 2008 at 1000 hours and was accepted by Charterers. The Vessel was waiting for a cargo at Santos, but Charterers were unable to provide a cargo for loading at Santos. On

6345376.1

June 17, 2008, Charterers, in an email, repudiated the Charter and instructed Owners to mitigate their damages (Ex. 2).

7.    Owners have incurred damages arising out of Charterer's breach of the Charter, including but not limited to demurrage at Santos until June 17, 2008 at 0300 hours, in the amount of $271,208.33 (Ex. 3)

8.    However, Charterer has failed and refused to satisfy the amount due to Plaintiff as a result of Charterer's breach of the Charter.

9.    On its website, Traxpo promotes itself as being primarily engaged in the importation of petrochemicals with a registered office in Kolkata, India with an associated office in Singapore.

10.    Upon information and belief, Traxpo totally dominated and controlled Strachem, commingled funds, caused funds to be transferred between corporations without appropriate documentation, failed to observe corporate formulation, failed to maintain an arms length relationship with Strachem, and failed to adequately capitalize Strachem.  Moreover, Traxpo assumed responsibility for Strachem's financial liability arising out of the Charter with Strachem in an email dated May 26, 2008 from S.K. Tapuriah, a member of Traxpo's board of directors, to Owners' agent wherein he stated "… we will be liable for demurrage …" (Ex. 4).  As a result, Strachem lacks an individual identity apart from Traxpo and has operated as a single economic entity serving the business of Traxpo.

6345376.1

11.    As a result of the foregoing course of conduct, the corporate veil should be pieced and Traxpo should be held liable under the Charter at the alter-ego of Strachem.

12.    Costs and attorneys' fees are routinely awarded to the prevailing party under English Arbitration Law.  As best as can now be estimated, Plaintiff expects to recover the following amounts in arbitration.

| | | |
|---|---|---|
| a) | Invoiced demurrage | $271,208.33 |
| b) | Freight ($51x32,000 M.T.) | $1,632,000.00 |
| c) | Less Expenses Saved | - $804,950.00 |
| | i) Principal Claim | $1,098,258.33 |
| | ii) 3 Years interest at 6% per annum | $197,686.44 |
| | iii) Attorneys Fees and Costs | $150,000.00 |
| | **Total** | $1,445,944.70 |

13.    The Defendants Strachem and Traxpo cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

14.    Upon information and belief, Strachem and Traxpo has, or will have during the tendency of this action, tangible or intangible property within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, American Express Bank, Bank of America, N.A., Bank of New York, Barclay's Bank, Citibank, N.A., Deutsche Bank Trust Co. Americas, Fortis Bank, HSBC Bank USA, N.A., JPMorgan Chase Bank, N.A., La Salle Bank, N.A., Standard Chartered

Bank, USB AG, U.S. Bank N.A., Wachovia Bank, N.A. and/or Wells Fargo Bank, N.A. which is due and owing to the Plaintiff.

15.    Star seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any property of Strachem and or Traxpo held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant, compelling them to arbitrate the claims asserted by Star, and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendants Strachem and Traxpo, citing it to appear and answer under oath all the matters alleged in the Verified Complaint.

B.    That since the Defendants Strachem and Traxpo cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, American Express Bank, Bank of America, N.A., Bank of New York, Barclay's Bank, Citibank, N.A., Deutsche Bank Trust Co. Americas, Fortis Bank, HSBC Bank USA,

N.A., JPMorgan Chase Bank, N.A., La Salle Bank, N.A., Standard Chartered Bank, USB

AG, U.S. Bank N.A., Wachovia Bank, N.A. and/or Wells Fargo Bank, N.A. which is due

and owing to the Plaintiff, in the amount of $1,445,944.70 to secure the Plaintiff's claims,

and that all persons claiming any interest in the same be cited to appear and pursuant to

Supplemental Admiralty Rule B answer the matters alleged in the Verified Complaint.

      C.    That this Court recognize and confirm any arbitration award or judgment

rendered on Plaintiff's claims herein as a Judgment of this Court.

      D.    That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be

initiated in the future, including any appeals thereof; and

      E.    That the Plaintiff has such other, further and different relief as the Court

may deem just and proper.

Dated: June 25, 2008
       New York, New York

              Carter Ledyard & Milburn LLP
              Attorneys for Plaintiff,
              Star Tankers Ltd.

              By:                         
                    Donald J. Kennedy
                    Laura Anne Reeds
                    Two Wall Street
                    New York, New York  10005-2072
                    Tel. 212-732-3200
                    Fax: 212-732-3232

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK    )
                           ) ss.:
COUNTY OF NEW YORK  )

1.      My name is Donald J. Kennedy.

2.      I am over 18 years of age, of sound mind, capable of making this verification, and fully competent to testify to all matters stated herein.

3.      I am a partner in the firm of Carter Ledyard & Milburn LLP, attorneys for the Plaintiff

4.      I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.      The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.      The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

6345376.1

7.     I am authorized to make this Verification on behalf of the Plaintiff.

Dated:  New York, New York
        June 25, 2008

_____
Donald J. Kennedy

Sworn to before me this
25th day of June, 2008.

_____
        NOTARY PUBLIC

**MARITZA LEON**
Notary Public, State of New York
No. 01LE6003817
Qualified in Nassau County
Commission Expires March 9, 2010

6345376.1

8

# EXHIBIT 1

1336418.1
1336418.1

## Andy Jones

| | |
|---|---|
| **Van:** | mss@maansmarine.com |
| **Verzonden:** | maandag 28 april 2008 7:18 |
| **Aan:** | Andy Jones |
| **Onderwerp:** | LANCE/ STARCHEM Confirmation revised laycan |

WE ARE PLEASED TO RECAP THE FOLLOWING FIXTURE WHICH IS CLEAN AND WITHOUT SUBJECTS.

Charter Party Date : 28th April 2008

Owners        Star Tankers Ltd

Charterers    Starchem Pte Ltd, Singapore

Vessel               Lance (Q88 attached)

Cargo         32,000mt 5moloo  1 grade Crude Industrial Ethanol

Load                 2sp/b out of Santos or Paranagua

Discharge     2 safe ports each one safe berth Bombay-Kandla range
                     Rotation south to north

Laydays       25th May-10th June 2008
              By 10th  May   narrow to 10 days
              By 15th  May   narrow to  5 days

Freight              US$ 53 pmt  basis 2/2 , US$ 51 basis 1 /2

Freight Payment      50% within 1st 7 days of loading and balance BBB

Laytime       250/250 tph load/disch  shinc

Demurrage     $23,000 pdpr

Freight Tax including Brazilian Inframat Tax on owners account

Cleaning shall be to the satisfaction of Charterer's inspector basis tanks to be clean
and free of residues of previous cargo and no wallwash/ Tyndal test required to check
for traces of hydrocarbons or chlorides.

Cargo to be loaded into zinc/epoxy/stainless space

Last cargoes are:
Benzene/ethanol/unleaded gasoline/ethyl acetate/MIBK/phosacid/caustic/ Talloil/soya
lethicine  (of which space for 22,000mt has prev cargo ethanol)


Commission 1.25% commission on Freight/Deadfreight/Demurrage payable by owners to
Maansmarine Services  when and as Freight/Deadfreight/Demurrage paid by charterers to
owners

Vessel Tentative Itinerary
Rotterdam   29th April
Med Port    05th May
Santos         25th May
Paranagua   28th/ 30th May
Mumbai/Kandla   25th/ 30th June

Charter Party: Asbatank c/p with charterers, below standard terms as amended to apply

Special provision clause: the special provisions clauses, as attached, are deemed to
be part of this charter party. These special provisions are to govern in the event
there is a conflict between these clauses and the printed provisions of ASBATANKVOY
form

1

1.  Owners warrant that the vessel and its equipment complies with all mandatory international regulations being in force at the date of this charter party applicable to the contracted voyage and cargo and that the vessel has onboard the necessary valid certificate.

2.  Cleaning clause: vessel's tanks, pumps and lines to be cleaned to charterers' inspector's satisfaction. Master shall present the Vessel for loading with tanks, lines and pumps thoroughly cleaned, drained, and dry and in all respects suitable to load the nominated cargo. Cleaning shall be to the satisfaction of Charterer's inspector, including any required wall wash test. Time required for cleaning shall not count as laytime, or, if the Vessel is on demurrage, shall not count as time on demurrage. Time and expense then required for Charterer's second inspection shall be for Owner's account. Should Charterer's inspector not be satisfied with the cleanliness then obtained, Charterer shall have the option, on written notice to Owner, of canceling the Voyage without liability of either Party, one to the other, but, if this option is not exercised, then all time and expense attributable to additional cleaning and re-inspection(s) are for Owner's account.

3.  Freight to be payable 'Before Breaking Bulk' into owner designated bank account as mentioned in invoice or within 7 banking days after receipt of freight invoice. Whichever is later.

4.  It is agreed that restrictions, if any, both at load port and discharge port are known to Owner and Owner confirm that vessel is suitable to meet such restrictions.  Add 'provided ports are declared during negotiations for this cp.'

5.  The Chamber of Shipping War Risk Clause Tanker (1-3) 1952, Both-to-Blame Collision Clause and New Jason Clause are deemed to be incorporated in this charter party, and all bills of lading signed under this charter party shall include or shall be deemed to include such clauses together with the Chamber of Shipping Voyage Charter Clause Paramount 1958.

6.  Owner guarantee that vessel is capable of discharging the cargo at the average rate of 800 500 CBMPH or to maintain a back pressure of 7 kg at ship's manifold, provided shore facilities permit.  Owner guarantees that the vessel is in every respect capable of receiving the agreed cargo at the minimum rate of 500 CBMPH. In case of discharge into tank trucks, provisions for present guarantee will not apply.

7.  Charterer shall be released from any liabilities in respect of any claim Owner may have under this charter party for demurrage, dead-freight etc., unless this has been presented to Charterer together with full supporting documents, including duly signed (when available) Statement of Facts / Time Sheets and copies of Notice of Readiness at load & discharge port(s) within sixty (60) days from completion of discharge of the cargo(es) under this charter party.

8.  Owners to give Charterer 7/5/3/2/1 days(s) ETA notices at load port and discharge port. On sailing from load port , vessel to advise Bill of lading quantity ,ETA discharge port  and arrival draught.

9.  Owner, Charterer and Broker to keep this fixture and contents of same strictly private and confidential.

10.  Should the original bill of lading not be available upon vessel's arrival at discharge port, the Owner hereby confirm they will discharge against Charterer's letter of indemnity, issued in accordance with Owner's P & I club wording, but without bank guarantee.

11.  Any disputes arising under this charter party to be settled in Singapore LONDON. General Average shall be adjusted, stated and settled according to York/ Antwerp Rules 2004 or amendments thereto issued from time to time and, as to matters not provided for by those rules, according to the laws and usages at the port of Singapore LONDON. English Law to apply to this charter Party

12.  Vessel to proceed directly to discharge port(s) for discharge of cargo.  Owner / master not to carry any other cargoes for other charterers to India.

13.  Charterer has the option to load/discharge ex/in trucks and/or barges and/or other vessel(s), provided it is done in accordance with local and/or international regulations all at Charterer's risk and expense.

2

Vessel shall give free use of vessel's hoses, couplings, reducers, pipes including stern load, as available on board.

14. In the event of failure of the vessel to discharge the entire cargo on board at discharge port provided reachable pumpable, charterer are entitled to claim the F.O.B. cost and the freight of overcarried cargo from the owner, which to be settled within 30 days of submission of claim. The joint ullage report will be basis for determining the quantity of overcarried cargo. No freight payable on overcarried cargo.

15. Charterer's surveyor to supply Master with a sealed cargo sample as well as a sealed "retained" cargo sample against Masters receipt for same. If required, Master to submit the sealed "retained" cargo sample to surveyor at port of destination, if so required /instructed by Charterer upon discharge or otherwise keep same at Charterer's disposal for maximum 60 days.

16. Charterer has the option to pre-inspect the ships tanks provided it will not interfere with ship's operations and subject to Master's discretion / approval.

17. Any waiting time for the tide and time lost due restrictions of night operations /navigation, issued by the port authorities, will not count as used laytime.

18. Time shall not count as laytime when used/lost for the following reasons:

a. On inward passage from anchorage to loading/discharging berth.
b. Due to any delay and/or failure and/or inefficiency of the vessel or its officer/crew.
c. As a result of lockout, strike, stoppage or restraint of labour.
d. In handling slops and/or in deballasting and/or ballasting unless concurrent with cargo operation.
e. As a result of delay to vessel getting into berth after giving notice of readiness for any reason over which Charterer/Shipper/Receivers has no control.

19. Total time to be reversible, including the allowable 6 hours after N.O.R. for all ports. This applies even when vessel is on demurrage. 6 hours Notice of Readiness at load and discharge port(s) to be given by master to shippers / receivers during local office hours (0800hrs to 2100hrs) always to apply as soon as the vessel has arrived and is in every respect ready to load or discharge the cargo(es), otherwise laytime to commence at 8.00 am or upon expiry of 6 hours notice which occurs later.

20. Wherever, as per this charter party terms, the laytime is not to be counted as 'used laytime' the same should also not be counted as ' time on demurrage' even when the vessel is on demurrage.

21. Any taxes and/or dues on the vessel and/or freight and customary vessel port expenses to be on owners account. Owner to submit "Certificate of Incorporation" and Tax Residency certificate for same.

22. Owners to accept charterer's Letter of Indemnity ("LOI") without bank guarantee for change of discharge port but such LOI to be given to owners prior to vessel's arrival at originally declared discharge port.

23. Any extra insurance, on account of vessel's age and/or class flag and/or ownership to be for Owner's CHARTERERS account.

24. Conoco Weather Clause: Berthing and/ or shifting delays due to proven weather conditions at load and/ or discharge port(s) shall count as half Laytime or if the vessel is already on demurrage then one half demurrages, providing that the vessel is in all respects ready and capable of loading and/ or discharging the cargo.

25. Vessel is member of international group P&I Club , and the carrying vessel is fully classed 100 Al Lloyd's register or equivalent .and validity of entry will be maintained throughout currency of this charter.

26. Transhipment of the cargo stipulated under this Charter Party is not

3

allowed without prior written consent from the Charterer.

27.    If vessel is able to, and Charterers so instruct, the vessel shall load earlier than commencement of laydays and the following shall apply.

Charterers shall have the benefit of such time saved when calculating laytime and/or demurrage at subsequent ports of call, and/or waiting places en route between ports. Such benefit shall be the time between commencement of loading until the commencement of the original laydays.

28.    Bill(s) of Lading and Mates Receipt to be issued for the quantity loaded as per shore tank figure certified by Charterer's Surveyors provided the difference, if any, does not exceed +/- 0.5%. Charterers have the option of issuing multiple Bills of Lading. If any cargo quantity discrepancy, Charterer's surveyor will issue a letter of protest. Owner's to release Bills of Lading as per charterer's Bill of Lading format and only after Charterer's confirm the final draft bill(s) of Lading are in order.
Charterer's to have the option of switching and splitting bill(s) of lading.
Upon receipt by Owners/Owners agents of the full first set of original bill's of lading, Owners to authorize issuance of second set of switched/ split bill(s) of lading. In the second set of bill(s) of lading total cargo quantity, quality, origin and date onboard to remain unchanged. Owners to issue Bills of Lading marked "Clean on Board" if required by Shippers/charterers. However, "Clean" in this context refers to the condition of the documentation that is a clean bill of lading without clauses or blemishes or exceptions which are contrary to the content of charter party upon it. "Clean" in this context does not refer to the quality or condition of the cargo.

29.    Force Majeure: the inability of either party to meet its obligations hereunder if occasioned by an event or condition of force majeure shall not subject such party to any liability for breach of the terms thereof. For the purposes of this charter party, Force Majeure shall mean without limitation, war, flood, cyclone damage, strike, breakage of major equipment, major accidents, riots, action of governmental authority, or any other event or act of god beyond the reasonable control of the party affected which prevents the material performance by such party of its obligations hereunder.

END RECAP ---------

Brgds
Ashok Pillai

4

# EXHIBIT 2

# Andy Jones

**Van:**       MSS [mss@maansmarine.com]
**Verzonden:** dinsdag 17 juni 2008 7:08
**Aan:**       Andy Jones
**Onderwerp:** FW: Lance / Strachem

Andy/ Ashok

Following received from charterers

Best Regards
Ashok Pillai

---

**From:** S K Tapuriah [mailto:sktapuriah@traxpo.com]
**Sent:** Tuesday, 17 June, 2008 10:29 AM
**To:** mss@maansmarine.com
**Subject:** Re: Lance / Strachem

Dear Mr. Ashok

Our supplier has failed to show us the stock at the port of Santos & hence we regret to inform you that we will not be able to load 32000 tons on vessel Lance.

We therefore accept the owners proposal to mitigate losses.

You are requested to please do the needful.

Regards,

S K Tapuriah

> ----- Original Message -----
> **From:** MSS
> **To:** 'Andy Jones'
> **Cc:** 'S K Tapuriah'
> **Sent:** Sunday, June 15, 2008 8:37 PM
> **Subject:** RE: Lance / Strachem
>
> Andy/Ashok
>
> Per telelcon with charterers, they would like to take the call on tuesday as there is still a chance of confirming the full qty by COB Brazil time 16th June.
>
> Best Regards
> Ashok Pillai
>
> ---
>
> **From:** Andy Jones [mailto:andy@huship.nl]
> **Sent:** Friday, 13 June, 2008 7:11 PM

# EXHIBIT 3

 **ALENDAL TANKERS BV**

Strachem Pty Ltd
Singapore

dienstenstraat 15
p.o. box 1050
3160 ag rhoon
the netherlands

tel. (31) 10 503 33 75
fax (31) 10 503 33 39
tlx 62003 ah nl
bankers: h.b.u. acc. 62.90.08.671

your ref.:  17th June 2008

our ref.:

rhoon,

### SUPPLEMENTARY  DEMURRAGE  INVOICE

mt LANCE
cp 28th April 2008
voy Brazil to India with ethanol
-----

Further to our demurrage invoice dated 9th June 2008 covering demurrage incurred up
till 9/6/2008 at 0800 we now on behalf of Owners hereby invoice you for additional
demurrage incurred so far whilst waiting for cargo off Santos up to 17/6/2008 at 0300 hrs
(0800 hrs Rotterdam time) at which time charterers declared their inability to ship cargo.

91.0000 hrs @ US$23,000 per day          US$ 87,208.33

Which please pay to:

DnB NOR Bank ASA
Haugesund
Norway

account number  :  5337 04 92553
IBAN            :  NO74 5337 0492 553
In favour of    :  Star Tankers Ltd

all our activities are subject to the conditions of the dutch forwarding agents and to the conditions of the rotterdam shipbrokers all
filed with the registry of the rotterdam county court
"registered at chambers of commerce rotterdam under nr. 24199525"



# ALENDAL TANKERS BV

Strachem Pty Ltd
Singapore

dienstenstraat 15
p.o. box 1050
3160 ag  rhoon
the netherlands

tel. (31) 10 503 33 75
fax (31) 10 503 33 39
tlx 62003 ah nl
bankers: h.b.u. acc. 62.90.08.671

your ref.:

our ref.:

rhoon, 13th June 2008

### SUPPLEMENTARY  DEMURRAGE  INVOICE

mt LANCE
cp 28th April 2008
voy Brazil to India with ethanol

Further to our demurrage invoice dated 9th June 2008 covering demurrage incurred up
till 9/6/2008 at 0800 we now on behalf of  Owners hereby invoice you for additional
demurrage incurred so far whilst waiting for cargo off Santos up to 13/6/2008 at 0800 hrs.

96.0000 hrs  @  US$23,000 per day          US$ 92,000.00

Which please pay to:

DnB NOR Bank ASA
Haugesund
Norway

account number  :   5337 04 92553
IBAN                    :   NO74 5337 0492 553
In favour of          :   Star Tankers Ltd

all our activities are subject to the conditions of the dutch forwarding agents and to the conditions of the rotterdam shipbrokers all
filed with the registry of the rotterdam county court
*registered at chambers of commerce rotterdam under nr. 24199525*



# ALENDAL TANKERS BV

Starchem Pty Ltd
Singapore

dienstenstraat 15
p.o. box 1050
3160 ag rhoon
the netherlands

tel. (31) 10 503 33 75
fax (31) 10 503 33 39
tlx 62003 ah nl
bankers: h.b.u. acc. 62.90.08.671

your ref.:

our ref.:
9th June 2008
rhoon,

## DEMURRAGE  INVOICE

mt LANCE
cp 28th April 2008
voy Brazil to India with ethanol
-----

On behalf of Owners we hereby invoice you for demurrage incurred so far whilst waiting
for cargo off Santos as per the enclosed Time Sheet.

96.0000 hrs  @  US$23,000 per day        US$ 92,000.00

Which please pay to:

DnB NOR Bank ASA
Haugesund
Norway



account number  :   5337 04 92553
IBAN            :   NO74 5337 0492 553
In favour of    :   Star Tankers Ltd

all our activities are subject to the conditions of the dutch forwarding agents and to the conditions of the rotterdam shipbrokers all
filed with the registry of the rotterdam county court
"registered at chambers of commerce rotterdam under nr. 24199585"

## TIME SHEET

LANCE
Cp 28/4/2008
Ethanol from Brazil to India
---

Santos
--

| 25/05/2008 | 1000 | NOR accepted by charterers |
| | 1600 | laytime starts |
| 09/06/2008 | 0800 | vsl still at anchor awaiting instructions |

| Time used so far | 25/1600 - 09/0800 | 362hrs 00 mins | | 352.0000 hrs |
| Used time | 32,000mt @ 250mt/hr load/disch | | = | 256.0000 hrs |
| | | | | ---------- |
| Demurrage | | | | 96.0000 hrs |

# EXHIBIT 4

# Andy Jones

**Van:**       MSS [mss@maansmarine.com]
**Verzonden:** maandag 26 mei 2008 15:32
**Aan:**       Andy Jones
**Onderwerp:** Lance

Andy/ Ashok

Following received from charterers

Best Regards
Ashok Pillai

---

**From:** S K Tapuriah [mailto:sktapuriah@traxpo.com]
**Sent:** Monday, 26 May, 2008 6:57 PM
**To:** mss@maansmarine.com
**Subject:**

Dear Shri Pillai,

Please ask shipping company to contact Mr. Joe Wythe who is acting on our behalf in Brazil.

His nos. are
Office : 00 55 21 26792540 / 37772535
res : 0055 21 36536770
Mobile : 00 55 21 98069867

I have spoken to him and understand that they will be only able to nominate the port with next two day. The vessel has to wait for our instruction and we will be liable for demmurrages if any. Please inform them to have pateince as it makes more viable for us to put the vessel for loading on 1st June.

Regards,
S K Tapuriah

_____ NOD32 3131 (20080526) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com